### STOCKEY & WHITE v. MEARS.
### (No. 1522.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 30, 1915. Rehearing Denied Jan. 6, 1916.)

1. MASTER AND SERVANT ⬤⟿286—QUESTION FOR JURY—NEGLIGENCE.

In a servant's action for injuries in removing a broken plate glass window, evidence *held* sufficient to warrant submission to the jury of defendant's negligence, as the proximate cause of the injury, in failing to warn plaintiff of the dangers of the work, in failing to furnish a safe place and sufficient workmen to

do the work, and in improperly directing the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☞286.]

2. MASTER AND SERVANT ☞293 — WARNING TO SERVANT—INSTRUCTION.

In such an action, an instruction as to defendant's failure to warn plaintiff of the dangers must be qualified by advising that a recovery can be had on such ground only if plaintiff did not know of the dangers, or would not have known of them by exercising ordinary care in performing the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. ☞293.]

3. TRIAL ☞296—INSTRUCTIONS — CONSTRUCTION AS A WHOLE.

In a servant's action for injuries, an instruction on defendant's failure to warn of the dangers of the work, without qualifying as to plaintiff's knowledge of the dangers, or his acquiring such knowledge by exercising ordinary care, does not constitute error, if such qualification is supplied in subsequent portions of the general charge referred to.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. ☞296.]

4. MASTER AND SERVANT ☞264—PLEADING—PROXIMATE CAUSE.

In a servant's action for injuries, an allegation that he was inexperienced in the work required of him, and ignorant of its dangers, is a sufficient allegation as to the proximate cause to support the admission of his testimony on the question of assumed risk, as tending to show his ignorance of the dangers encountered in performing the work as directed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. ☞264.]

5. DAMAGES ☞131—AMOUNT OF VERDICT.

Where a servant was severely cut on his hands and arms by glass, and suffered great pain, medical expenses, loss of time, and earning capacity, a verdict for $964 *held* not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370; Dec. Dig. ☞131.]

6. TRIAL ☞133—MISCONDUCT OF COUNSEL.

If the evidence or size of a verdict indicates that the jury were influenced by improper remarks of counsel in intimating the defendants were protected by indemnity insurance, and that any judgment recovered against them would be paid by the insurance company, a judgment for plaintiff should be reversed, notwithstanding an objection was sustained to such remarks, and the counsel making them reprimanded.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. ☞133.]

Appeal from Lamar County Court; Tom L. Beauchamp, Judge.

Action by Bradley Mears against Stockey & White. Judgment for plaintiff, and defendants appeal. Affirmed.

H. T. Cooper, of Ft. Worth, and Wright & Patrick, of Paris, for appellants. J. W. Love and Fred Dudley, both of Paris, for appellee.

HODGES, J. The appellee, Mears, a carpenter in the employ of the appellants Stockey & White, sued them for personal injuries received in August, 1913, while assisting other employés in removing a broken plate glass window from a building in the city of Paris. Stockey & White were contractors engaged in that character of work, and the appellee was under the supervision of a foreman named Stowers. The plaintiff below alleged in his petition that his injuries were proximately caused by the negligence of Stowers in removing the plate glass above referred to. In a trial before a jury the appellee recovered a judgment for the sum of $964.

[1] The testimony shows that on the date of the injury Stowers, with the assistance of the appellee and two other employés, undertook to remove from a window a plate glass three-eighths of an inch thick and 9 by 11 feet square. The appellee testifies as follows concerning the manner in which the work was performed and the circumstances under which his injuries were received:

"The work to be done was to remove a plate glass from the lower part of a building on the north side toward the front. When we got over there we found Mr. Thompson, another carpenter, who was to assist in removing the glass. The first thing I was told to do was to get a stepladder. * * * I borrowed the ladder and carried it back to the building where the other boys were at work. The glass was still in the frame. * * * When I got back Mr. Stowers told me to place my hands upon the glass to keep it from moving. I laid down my stepladder and took hold. Mr. Thompson and Mr. Barnett were assisting to remove it, and we raised the glass. Mr. Stowers told me to catch up on the glass and hold the glass while the boys took the rest of the screws off. I put my hands on the glass and held it until they got the screws off, and he made preparation for me to turn loose of the glass and catch it at the bottom. He says, 'Now let go there and catch hold of the glass at the bottom and help us lift it.' I took hold of the glass as directed. When I lifted the glass it broke, and part of the glass from above fell and struck me on each wrist and cut each wrist. It cut my right wrist across the front, and my left wrist across the top."

Other testimony shows that the glass had a crack in it near the center. There was also evidence tending to show that this method of removing a glass of that size and in that condition was not reasonably safe, and that a different method, requiring more men, should have been adopted. The appellee also testified that he was inexperienced in such work, and did not know the dangers attending that manner of performing it.

In the first paragraph of the court's general charge he undertook to state the general principles of law relative to the duties which the master owes to the servant in furnishing a safe place in which to work and safe appliances, and the general rules governing the assumption of risks by the employé. After preliminary definitions and explanations, the court gave the following:

"Now, if you believe from the evidence in this case that the defendants failed to exercise ordinary care to furnish plaintiff a safe place to perform his work, and that they sent plaintiff to perform a dangerous task without sufficiently warning him of the dangers of same, or that they failed to furnish sufficient men to perform the work, or that their foreman failed to prop-

erly direct the removal of the glass, and that such failure, if any, on the part of defendants was the proximate cause of plaintiff's injuries, if any, you will find for the plaintiff, unless you find for the defendant under another section of this charge."

Objections to this charge are: (1) That the evidence was not sufficient to warrant the submission of the issue presented; and (2) that it was error to submit the failure to warn plaintiff of the dangers as a ground of recovery, without advising the jury that plaintiff could recover for a failure to warn him only in the event he did not know, or would not by exercising ordinary care necessarily have known, of the dangers in performing the work.

[2, 3] The first objection is not tenable, and is overruled. The qualification insisted upon in the second was proper, and the appellant had a right to have the jury so instructed; but we think this was in effect done in subsequent portions of the general charge. The concluding clause of the paragraph above referred to clearly shows that this portion of the charge was to be considered in connection with other paragraphs which were to follow. By reference to paragraphs 5, 6, and 8, it will be observed that the court did supply those qualifications. Those paragraphs are as follows:

"If you believe from the evidence that plaintiff's injuries were caused by the dangers ordinarily incident to the work he was performing, and that such dangers were apparent to a person of his skill and experience, the risk of which he would assume upon entering the employment, as explained in the first paragraph hereof, you will find for the defendants.

"Should you believe from the evidence that the removal of the glass was dangerous, and should you find that defendants were negligent, as herein explained, still, if you further believe from the evidence that at the time plaintiff undertook to remove said glass he knew or should have known by the exercise of ordinary care of such dangers, then you are instructed that he assumed the risk thereof and in such event, you will find for the defendants.

"Now, if you believe from the evidence that plaintiff was unskilled in the work of removing glass under the conditions described, and you further believe that he relied upon and had reason to rely upon the skill of defendants' foreman, and did so rely upon him, and that he performed his work in the manner said foreman directed, and that he did so without any knowledge of the dangerous work he was performing, then you are instructed that he assumed no risk of entering upon and performing said labor."

[4] The testimony of the appellee concerning his lack of experience is also objected to, upon the ground that such inexperience was not pleaded as the proximate cause of the injuries. The appellee did allege in his petition that he was inexperienced in such work, and did not know the dangers incident to the removal of glass of that size and condition. This testimony was admissible as bearing upon the issue of assumed risk; that is, as tending to show that the appellee was ignorant of the dangers which he encountered in undertaking to perform the work in the manner he did.

[5] It is contended that the judgment is excessive. The testimony of the attending physician who treated the appellee is as follows:

"His right arm was cut across the wrist. The left arm was cut pretty much in the same place, although it was square across and then turned up the left thumb. I dressed his arm, and then it was quite a while before he got so he could work. . After his arm healed I told him to go back to the contractor and try to get work. The cut was about one-fourth of an inch deep. The worst cut was on the right wrist. The large tendons were not cut entirely in two. It was a very painful cut. He seemed to be in pain when he came to my office, and came near fainting. I think his injuries are permanent. After his recovery he claimed that there was not any feeling in his right hand. I have examined plaintiff since previous trial, and his thumb seems to be perishing, and I think it will continue."

The evidence shows that since the injuries the appellee's earning capacity has been considerably reduced, and that he has been compelled to accept lower wages. It is also shown that he lost some time and incurred some expenses for medical treatment. The verdict is, we think, very moderate, if this testimony is to be accepted as true.

[6] During the progress of the trial counsel for the appellee asked one of the appellants, while on the stand, to state whether or not his firm did not carry indemnity insurance, and if the insurance company was not to pay any judgment recovered in the case. An objection to this was sustained, and at the same time the court reprimanded counsel for asking the question. During the closing remarks counsel for the appellee also used this language:

"There is no evidence that this money is to be paid by these defendants."

This language was excepted to, but the court appends to the bill of exceptions an explanation, which says that it was used in reply to a statement repeatedly made by defendants' counsel to this effect:

"They are trying to make these defendants go down into their pockets and dig up money for this accident."

When the defendants' attorney objected to the argument, the court instructed the jury to disregard it, and reprimanded the attorney for the plaintiff for using the argument. If the state of the evidence or the size of the verdict was such as to indicate that these objectionable remarks influenced the jury in their verdict, we should feel it our duty to reverse this judgment upon that ground alone. Such attempts to get before the jury illegitimate evidence, which is calculated to influence their findings, have been so often condemned that it would seem to be unnecessary to here repeat the warnings given by the courts. The trial court did all that was required of him under the circumstances to destroy whatever evil consequences may have resulted from the improper conduct and remarks of the appellee's attorneys, and the size of the verdict and the character of the evidence are such that we think the jury

might well have found as they did, had no such misconduct been indulged in.

The judgment is therefore affirmed.